[No. 27943. Department Two. August 8, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v. PAUL R.
DE GASTON, *Appellant.*[1]

[1]Reported in 104 P. (2d) 756.

74

 

*Warren Hardy,* for appellant.

*B. Gray Warner* and *John M. Schermer,* for respondent.

JEFFERS, J.—Defendant, Paul R. De Gaston, was, by an information filed by the prosecuting attorney of King county, on November 25, 1938, charged with the crime of abortion on two counts. In view of the fact that the jury disagreed on the first count, and the further fact that the statement of facts as filed and certified pertains only to count two of the information, no further reference will be made to count one. By count two, defendant was charged as follows:

"He, said Paul R. De Gaston, in the county of King, state of Washington, on or about the 2nd day of September, 1938, with intent thereby to produce a miscarriage of a woman, one Jane Doe Northrup, wilfully, unlawfully and feloniously did by the use of instruments the exact nature of which are at this time unknown to the prosecuting attorney, perform an illegal operation upon the said Jane Doe Northrup, said act not then and there being necessary to preserve the life of the said Jane Doe Northrup, or that of the child of which she then and there was pregnant."

The defendant was tried by a jury and found guilty of the offense charged in count two, as appears from the verdict filed in the cause on January 20, 1940. A motion for new trial was made by defendant and denied, and thereafter, on January 27, 1940, defendant was sentenced to one year in the county jail. This appeal by defendant followed.

Appellant makes the following assignments of error: (1) The court erred by making a comment on the evidence, which error was not cured by his subsequent

instructions to the jury to disregard the same; (2) in failing to sustain appellant's challenge to the sufficiency of the evidence at the end of the state's case as to the second count in the information, and in overruling his motion to dismiss; (3) in allowing appellant to be impeached upon a collateral matter brought out entirely upon cross-examination; (4) in failing to sustain appellant's challenge to the sufficiency of the evidence to sustain a conviction at the end of the state's case, and in overruling his motion to dismiss; and (5) in overruling appellant's motion for a new trial.

In regard to the first assignment of error, appellant admits that the force of his argument is weakened by reason of the fact that the testimony to which the court's remarks had reference was relevant only to the first count in the information.

The first assignment of error is based upon a question asked Lawrence A. Peters, a witness for the state, the withdrawal of the question by counsel for appellant, and the remarks made by the trial court relative thereto. The following question was asked Mr. Peters by counsel for appellant on cross-examination:

"Q. Do you still further recall that we had some further conversation about the de Gaston case which, as I recall, was something like this. I asked you, 'What do you think they are going to do about the de Gaston case,' and I will ask you if you did not reply to that, 'Well, I don't know. I think they ought to dismiss it, the testimony comes from such a polluted source.' A. I did not."

Then followed considerable argument between counsel for the state and for appellant, after which counsel for appellant stated: "I will consent that it may be disregarded. Withdraw the question;" whereupon the court stated: "It may be stricken from the record and disregarded by the jury; and I hope all immaterial matters will be disregarded."

Appellant contends that the last part of the court's statement had the effect of discrediting his counsel with the jury.

While we do not believe there was anything in the above statement which could be said to be a comment on the evidence, nor can we see anything in the court's statement prejudicial to counsel for appellant, in any event, if such there was, it was not, in our opinion, so prejudicial as not to have been cured by the instructions which it is admitted were subsequently given. In addition, the statement was made relative to testimony given to sustain the first count of the information, and is not before the court at this time, and could not be considered as affecting appellant's rights in connection with count two.

We will next discuss appellant's third assignment of error.

Appellant's contention is based upon the fact that, in his direct examination, he was not asked his name, but only whether or not he was the defendant; that, regardless of this fact, counsel for the state on cross-examination interrogated appellant, over appellant's objection, as to his name, and whether or not Paul R. De Gaston was his real name, and, also over appellant's objection, interrogated appellant relative to his education and what medical schools he had attended. It is appellant's contention that this cross-examination was improper, because it had not been covered by appellant's examination in chief.

It is true that, on direct examination, appellant was only asked whether or not he was the defendant. It further appears from his examination that appellant testified he was a bacteriologist; that in his work he made an internal examination of women, by the use of certain surgical instruments, to procure specimens. We quote from appellant's testimony:

"Q. What I am trying to get at is, how would you go about it to get the specimen in case you were going to examine something from the lining of the womb in one of these tests? A. Well, of course, I would have to enter the vagina, open the cervix, dilate it slightly, and then go in with tissue forceps or a curette, depending on what the occasion demanded after the probing showing the location of the infection, which differs from healthy tissue by the feel of it; and then obtain a specimen by just scraping it off or scratching it off. That is what it is for. It is a scratching instrument; it is not a cutting instrument."

On cross-examination by counsel for the state, appellant was asked his name, and answered it was Paul R. De Gaston. The witness was then asked if that was his true name, and after considerable argument between counsel, answered that it was. The witness was then asked if he used another name, and answered that he used his father's name, which was "August Hugo De Gaston." He was then asked if his father's true name was August Herman Bach, and answered that it was not. Witness was further asked if his true name was not "Theodore Bach," and if he was not a German citizen. To both of these questions, appellant answered "No."

The witness was further asked if he did not, on December 7, 1938, in the office of the United States immigration department, in Seattle, in a conversation with Mr. Schwandt, an immigration inspector, state that his true name was "Theodore Bach." To this question, the witness answered:

"I am sorry, but I did not make any such a statement. I made exactly the same statement as right now. He has the papers. My father's name is August Hugo Bach-Gaston, and the hyphen stands for 'de'."

Inspector Schwandt was thereafter called to the stand, and over appellant's objection was asked

whether or not he knew appellant, Paul De Gaston, to which question he answered that he did. Witness was then asked whether or not appellant, at the immigration station, in Seattle, in 1938, stated to him that his name was Theodore Bach, to which question witness answered "Yes."

While it is true appellant was not asked his name in direct examination, we are of the opinion the rule relative to cross-examination is not as limited as contended for by appellant. We think it was not improper to allow counsel for the state to inquire relative to appellant's true name, and that it was also proper to show that appellant had used, or been known by, another name. See *State v. Miller,* 164 Wash. 441, 2 P. (2d) 738. We do not believe the matter of appellant's name can be said to be an immaterial matter. However, this court has stated that the matter of cross-examination is within the sound discretion of the court. *State v. Gaffney,* 151 Wash. 599, 276 Pac. 873, 65 A. L. R. 405.

After considering all the testimony herein, and particularly the answers of appellant in response to the questions put to him in regard to the conversation had with Inspector Schwandt, we are of the opinion no prejudice resulted to appellant from such cross-examination, and that it cannot be said the trial court improperly allowed such examination, or the examination of Mr. Schwandt.

█ It is also contended the court improperly allowed appellant to be interrogated relative to his education, particularly with reference to his medical training. Appellant testified at length as to his use of certain surgical instruments used in internal examinations of the human body, and that the use of such instruments in obtaining specimens, in his work as a clinical proprietor, constituted a large part of his work. In view of this testimony, we are satisfied it was perfectly

proper to cross-examine appellant as to his education and training in the use of such instruments.

■ Appellant's other assignments of error go to the insufficiency of the evidence to take the case to the jury and to sustain a conviction. Appellant's contention is grounded upon his claim that Dr. Kelton, a witness for respondent, testified that, in order to perform an abortion, the vagina must first be opened with a speculum, the mouth of the cervix, which is the entrance to the womb, must be pulled down with a tenaculum, and a dilator must be used to open the mouth of the cervix to permit the entrance of the curette. Appellant claims that, inasmuch as it does not appear from the evidence that a dilator was actually used, there could have been no intent to perform an abortion.

In the first place, it does not appear from the testimony of Dr. Kelton, as we read it, that a dilator is necessarily essential to the performance of an abortion. The matter of the use of a dilator came up in the following manner and upon the following question being asked: "Q. Doctor, is it common practice to use a dilator *if necessary*? A. Yes, a dilator." (Italics ours.)

Mr. and Mrs. Northrup both testified that they went to the office of appellant to see about having an abortion performed on Mrs. Northup, and there saw and talked with Miss Franzen, a nurse in the office of appellant. Mrs. Northrup testified that, prior to the time of this visit, she had been experiencing nausea in the mornings, and that she was two weeks past her menstrual period; that she had two children at the time.

It further appears from the testimony of the Northrups and Miss Franzen that Mr. Northrup paid to Miss Franzen twenty-five dollars in cash and signed a note for twenty-five dollars; that, on the same afternoon,

Mrs. Northrup came back to the office and Mr. De Gaston put her on the operating table and performed an operation on her. Mrs. Northrup further testified that the operation caused her no pain, as appellant deadened the uterus.

Miss Franzen testified that she communicated to Mr. De Gaston the purpose of the visit of the Northrups and what they desired to have done, and was authorized by Mr. De Gaston to obtain a note for twenty-five dollars, in addition to twenty-five dollars in cash. Miss Franzen further testified that she was present when Mr. De Gaston performed the operation, and that he had a speculum, a tenaculum, a curette, and some dilators. The witness further testified that she did not think Mr. De Gaston used the dilators, that she didn't remember his using them, but he used the other instruments. Appellant admitted that he opened the vagina with a speculum, washed it out, and saw a piece of placenta protruding from the mouth of the cervix, and that he removed this tissue with tissue forceps.

Without further reviewing the evidence, we think there was ample testimony to take the case to the jury and to sustain the conviction of appellant on the second count of the information.

The trial court properly denied the motion for new trial.

The judgment is affirmed.

BLAKE, C. J., BEALS, STEINERT, and DRIVER, JJ., concur.