[No. 40247.    Department Two.    June 12, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL CARTWRIGHT, *Appellant.**

*Reported in. 456 P.2d 340.

*Madison R. Jones,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers* and *Albert J. Golden,* for respondent.

HALE, J.—Some individuals cannot stand sudden prosperity. Defendant made a conspicuous but unlikely display of affluence, and it caused his undoing when a jury found him guilty of burglary.

Mark Drobney's All American Service Station at 9th and Birch Streets in Walla Walla was burglarized during the late hours of December 27 or early morning hours of December 28, 1967. At defendant's trial, Mr. Drobney testified that, when he closed the station on the night of the burglary, he left approximately $425 in currency in the station and a large amount of loose coins and coin rolls in the cash register, along with twenty-six 2-dollar bills which he was holding for one of his customers who saved 2-dollar bills. Also burglarized that night was the John Marshall Mobil Station, located diagonally across the street from the All American Service Station. From it, the burglar had taken between $150 and $200 in currency and coins, and a Brownie movie camera kept in the box which still had the store price mark on it. The state charged defendant with burglary of the Drobney All American Service Station, and in the course of its proof submitted evidence showing that defendant had burglarized the Marshall Mobil Service Station, too.

Connecting defendant with the burglary of Drobney's station as charged in the information, the state's evidence showed, *inter alia,* that (1) the day before the burglary defendant had been released from the Walla Walla County jail with only $10.95 in his possession; (2) the day after the burglary, he bought a used Cadillac automobile from a

local dealer in Walla Walla for $550, trading in an old car and paying $400 in currency which included twenty-five 2-dollar bills; (3) the day after the burglary, defendant displayed to other persons a large amount of money in bills, coins and coin rolls and tried to give away money to some youngsters who declined it, and when asked in the presence and within the hearing of several persons where he acquired the money, he said he had broken into the All American Service Station; (4) arrested that day, December 28, on a traffic violation, he had $145 on his person, including an unusual amount of coins; and (5) the Brownie movie camera, identified by its owner as the one left in Marshall's Mobil Station, was found by the police in an apartment to which the defendant had access. The apartment in which the camera was discovered was a unit of the apartment house where defendant had been staying, defendant having been in his own apartment some time during the night of the burglary.

The jury deliberated 38 minutes and returned a verdict of guilty. We think the evidence amply supports the verdict. *State v. Davis,* 53 Wn.2d 387, 333 P.2d 1089, *cert. denied* 359 U.S. 981, 3 L. Ed. 2d 930, 79 S. Ct. 902 (1959).

Defendant assigns error to evidence which tended to show the commission of crimes not charged in the information. Evidence of the other burglary came into the case when the state showed that the nearby John Marshall Mobil Service Station had been entered that night and what had been taken. Alex N. Dietz, Captain of the Walla Walla police department, asked on direct examination if he had investigated a service station burglary on the night of December 27-28, 1967, first answered without objection that he had investigated four service station burglaries that night. Thereafter, over objection, the state was permitted to prove that John Marshall's Mobil Service Station, diagonally across the street from the Drobney station, had been burglarized and that approximately $150 to $200 in currency and coins and a Brownie movie camera with the price mark on its box had been taken.

The state, as earlier noted, also showed that defendant had been released from jail the day before the burglary with only $10.95 in his possession, and that defendant lived near, had access to, and had been in the apartment where the camera was discovered.

██ Defendant contends, and we agree, that to try one for a crime not charged in the information is grossly prejudicial and, unless evidence of the unrelated crime tends to show motive, intent, identity, common scheme, modus operandi, or absence of mistake or accident, it is inadmissible. *State v. Hames,* 74 Wn.2d 721, 446 P.2d 344· (1968); *State v. Hujus,* 73 Wn.2d 240, 438 P.2d 212 (1968); *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950). But there is another and a most persuasive reason for admitting evidence which may coincidentally prove other crimes and that is that such evidence is relevant and material to any issue of fact raised by the information under which the defendant is standing trial. *State v. Hames, supra.*

Proof that he burglarized the Mobil station tended to place defendant in the vicinity of the All American Service Station during a time relevant to the burglary of the All American Service Station for 'which' he stood charged. It also tended to prove that, if he had burglarized the one, he had burglarized the other, because evidence that the amount taken from the All American Service Station that night was insufficient to account for the amount spent, displayed and possessed by the accused the day following the burglary, whereas the combined loot from both service stations would exceed this amount. Evidence thus tending to show possession of the currency, coins and a Brownie movie camera taken from the Mobil station was thus relevant and material both to place the defendant within the area of the burglary charged in the information at a relevant period of time during hours of darkness, and also to establish his possession of the avails from the burglary charged. All competent evidence which is material and relevant to prove or· disprove any issue cognizable by the trier of the facts is admissible even though such evidence may additionally show that the accused committed a crime other

than the one charged. *State v. Blanchey,* 75 Wn.2d 925, 454 P.2d 841 (1969). *See* 2 Wigmore, *Evidence* § 304 (3d ed. 1940). Therefore, evidence showing that the accused burglarized the John Marshall Mobil Service Station on the night or early morning of December 27-28, 1967, was relevant and material to the issue that he had burglarized the All American Service Station located diagonally across the street.

The next assignment of error relates to the identification of the defendant by a name other than the name charged in the information. It also challenges the court's refusal to instruct in effect that a person has freedom to choose his name and to be known by more than one name, and that the use of more than one name is not evidence of the commission of any crime.

The information charged defendant under the name of James Dean Martin. At arraignment, he said that his true name was Daniel Cartwright, and the court thereupon directed that all further proceedings be taken in that name. Several witnesses, in identifying the defendant, referred to him as James D. Martin, and one police officer said that, when arrested, the defendant carried a driver's license issued in the name of James Martin. Defendant contends that the court's refusal to instruct that he had a right to use a different name without incurring any inference of criminality amounted to a reversible error under *State v. Smith,* 55 Wn.2d 482, 348 P.2d 417 (1960).

*State v. Smith, supra,* appears to us inapplicable here. There, the information actually charged that the acts set forth in the information were committed by the defendant while using a series of different names. As to some of the listed aliases, there was no proof. At the close of the evidence, the court attempted to remove the unproved aliases from the record, but by inadvertence they were set forth on both the cover sheet of the instructions and the proposed verdict forms which went to the jury. There being no evidence to connect the accused with the offending aliases, this court assumed the existence of serious prejudice and ordered a new trial.

■ Proof of aliases is not per se inadmissible, for there is no general ban wholly prohibiting reference to them. The test as to whether an alias may be proved or referred to by the state is whether the alias or other name is relevant and material to prove or disprove any of the issues in the case. In the instant case, the identity of the accused was very much in issue, for the state had the burden of proving beyond a reasonable doubt that a burglary occurred and that the defendant committed it. Evidence of defendant's actions shortly before and after the burglary was thus relevant and material to the issues raised by the information, and it was quite proper for the witnesses who described these actions to identify the accused under the name by which they knew him when they described these actions to the jury. If the evidence of aliases or assumed or different names is relevant and material to the issues, it is admissible. *State v. De Gaston,* 5 Wn.2d 73, 104 P.2d 756 (1940); *State v. Miller,* 164 Wash. 441, 2 P.2d 738 (1931).

Affirmed.

HUNTER, C. J., HILL and NEILL, JJ., and DONWORTH, J. Pro Tem., concur.