[No. 2401–2.   Division Two.   April 7, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. STANLEY D. ROSE, *Appellant*.

*Lar Halpern,* for appellant.

*Jeremy Randolph, Prosecuting Attorney,* for respondent.

PETRIE, C.J.—Stanley D. Rose appeals from an order of the Superior Court for Lewis County which denied his petition for post–conviction relief. His appeal raises, for the third time before this court, the contention that he was denied a fair trial because the jury which convicted him of several felonies in 1970 was advised that the person on trial was "Stanley Dee Rose, aka Stanley Abel," an alias unestablished by any proof in the record. For the third time, we find no merit to this contention.

Ordinarily, we would note simply that the potential error had not been brought to the trial court's attention and declare that error cannot now be predicated thereon. *State v. Miller,* 164 Wash. 441, 2 P.2d 738 (1931). Because of the present posture of the case, however, we deem it necessary to pursue the issue in some detail and to recite some of the more salient facts which were presented to the jury in 1970.

Shortly after 10 p.m. on Sunday, June 21, 1970, Officer Donald C. Schwartz of the Chehalis Police Department responded to a police call to investigate activity at a women's apparel shop in Chehalis. When Officer Schwartz, in uniform, drove his patrol car down the alley behind the shop, he noticed that the back door of the shop was open and two men were standing in or near the doorway. Schwartz got out of the car, and both men, "crouching down," separated, one going to the officer's right and the other going to the left. He "shouted three or four times for them to raise their hands" and described the response as follows:

There was no answer, no word from either one. The subject to the right, which stayed in front of the open door-

way, fired at me several times. I fired back and the subject on the left said, he's hit, he needs help.

The "subject on the left" was a man named Donald Frank Carr, whom Officer Schwartz then arrested and placed in the patrol car. At that point, Schwartz was joined by Lewis County Deputy Sheriff Gene Boling, who was armed with a shotgun. Boling placed himself behind a power pole and was promptly shot at. He returned the fire in the direction "where he had shot at me from." He wounded the person who was shooting at him and demanded the person throw out his gun. The wounded gunman complied. Stanley D. Rose, the defendant herein, was that wounded gunman.

Schwartz retrieved the gun Mr. Rose was firing, a 9 mm. Browning semiautomatic pistol capable of accommodating a clip which holds 13 rounds. A radio tuned to the frequency used by the Chehalis Police Department and equipped with an ear plug attachment was strapped to the defendant's torso.

Officer Winifred Murray, a 21–year veteran of the Chehalis Police Department, arrived at the scene shortly after the shooting ceased. He found a 23–inch screwdriver leaning against the door on the outside of the shop, and a crowbar lying on the floor inside the shop. Various marks made on the door matched either the screwdriver or the crowbar. Just inside the doorway was a suitcase which contained a wide assortment of tools including a high speed drill with various Carborundum bits. Officer Murray described the drill's capability as follows: "You can cut steel with that faster than you can cut it with cutting torch if it's thick steel." He noted, incidentally, that the business establishment immediately adjacent to the apparel shop, and separated from it by a plaster wall, was a jewelry store.

The gun which Mr. Rose surrendered was turned over to Officer Murray. He noted that the clip, still intact, contained four unexpended rounds, and a live round was in the chamber. Another clip was found in the defendant's trouser pocket by the ambulance driver who took Mr. Rose to the

hospital. In the vicinity where the other officers reported the shooting had occurred, Murray found eight expended 9 mm. cartridges clustered in two separate groups of four. Ballistics tests established that the expended cartridges had been fired from Mr. Rose's gun.

Several times in July 1970, Officer Murray talked to Mr. Rose in the county jail. On several of those occasions Mr. Rose expressed a braggadocian pride in the tools and the pistol. In one discussion about the tools, Murray testified: "He asked me what I thought of them; asked me if I was acquainted with that large a drill." Officer Murray had found some indication that one of the slugs apparently tore a hole in a wall approximately 15 feet above the ground. Puzzled by this evidence, he questioned Mr. Rose about the apparent wild shot. He testified that Mr. Rose responded as follows:

Mr. Rose, the defendant, told me that the reason he figured that was wild was because he was sure at the time he pulled the trigger he was hit in the right elbow.

On a direct appeal from Mr. Rose's conviction of the several felonies charged (the first time this matter was before us) we affirmed convictions of burglary while armed with a deadly weapon and two counts of resisting arrest by firing on a law enforcement officer. As a result of sentences imposed on those three convictions, Mr. Rose faces a maximum term of confinement of 55 years and a statutory minimum term of 20 years. *See State v. Rose,* 7 Wn. App. 176, 498 P.2d 897 (1972), *review denied,* 81 Wn.2d 1008, *cert. denied,* 414 U.S. 835, 38 L. Ed. 2d 70, 94 S. Ct. 177 (1973).

On that direct appeal, Mr. Rose contended in part that the trial court committed prejudicial error because the jury had been advised that he was also known as Stanley Abel, an alias not established by any proof in the record. At that time we found no indication that the jury had been so advised (and some indication from the verdict forms that they had not been so advised) and concluded there was no merit to his contention.

In 1975 the defendant raised the same issue in a CrR 7.7 petition for post–conviction relief filed in this court. The then chief judge of this division, the Honorable Ralph Armstrong, entered an order denying that petition 'for the reason that the petition was frivolous on its face because the same issue had been presented to us previously and had been found to have no merit. The Supreme Court granted review of that order and ultimately transmitted the matter to the Superior Court for Lewis County "for a determination of whether petitioner was in fact prejudiced by the reference to 'also known as' or 'aka'. . ." After taking testimony on the issue, the Honorable John W. Schumacher, sitting as a visiting judge in Lewis County, entered an order denying Mr. Rose's petition for post–conviction relief. This appeal followed.

In this appeal, Mr. Rose posits the proposition that, in a criminal cause, whenever a jury is advised of an unproved alias ascribed to the defendant, prejudicial error is committed as a matter of law. He cites as authority for that proposition *State v. Smith*, 55 Wn.2d 482, 348 P.2d 417 (1960). The record now before us does reflect that the jury was advised in six separate instances that the defendant on trial was "Stanley Dee Rose, aka Stanley Abel." It is also uncontroverted that the prosecution failed to present any proof that Mr. Rose was also known as Stanley Abel.

A superficial reading of *State v. Smith, supra,* could convey the impression Mr. Rose derives from the opinion. The key paragraph, to which he directs our attention, declares:

> It is admitted that submitting the aliases to the jury was error, but the state claims no prejudice resulted. It is common knowledge that the use of aliases is frequently associated in the public mind with the so–called "criminal" class. We cannot assume that the jury was unaffected by the unproved aliases. *To do so would be sheer speculation. The doubt must be resolved in favor of the accused.*

(Italics ours.) *State v. Smith, supra* at 484.

The *Smith* opinion sparsely recites facts. Examination of the briefs filed in the Supreme Court in that case reveals a more detailed recitation of those facts. Mabel Smith alias Mabel Mary Linney alias Mabel Smith Reichmann alias Margaret Jones alias Mabel Reichmann was charged with embezzling her employer's funds in excess of $75 between July 1 and September 11, 1957. She had only been employed in the store since April 2, 1957, but within 3 weeks was promoted to store manager. The larceny was proved by comparison of the totals on the sales slips with the total of the bank deposits during a given period of time. The bank deposits were $1,600 short of total sales reported by the sales personnel. As store manager, Mrs. Smith was charged with the responsibility of preparing the bank deposits, but testimony indicated that other employees at times took the deposits to the bank.

A police officer testified that Mrs. Smith admitted she was several hundred dollars short in her cash fund, and a deputy prosecuting attorney testified that she told him that she had, at times, taken money from the funds she was supposed to deposit. No written statements were taken, nor did these witnesses specify the time frame of the admitted taking.

The prosecution proved that Mabel Smith also used the name Mabel Reichmann, but it failed to prove any of the other aliases. The trial court attempted to limit the jury's knowledge to only the two names proved, but through a clerical error, all the aliases were included on the cover sheet of the jury's instructions and on the verdict forms submitted to the jury.

For reasons known only to the appellate court which decided *Smith,* the error was categorized as prejudicial, and the cause was remanded for new trial accompanied by a strong condemnation of the practice of attaching a series of aliases to a defendant's name when identity of the defendant is not an issue in the trial of the cause.

The Supreme Court's conclusion is understandable in an embezzlement case where the essential element of the crime

was proved by circumstantial evidence even though the defendant therein appeared to have made most damaging admissions to two law enforcement witnesses. We believe, however, the *Smith* court found prejudicial error after evaluating the evidence, not as a matter of law.

Our interpretation of the *Smith* opinion is consistent with subsequent references to that case by the Supreme Court. In *State v. Johnson,* 60 Wn.2d 21, 371 P.2d 611 (1962) the court used *Smith* and three other cases to illustrate types of error which inadvertently occur in the trial of a criminal matter. The court noted that inherent in all four opinions are the determinations of the Supreme Court that the claimed error did or did not deprive the defendant of a fair trial. Additionally, in *State v. Cartwright,* 76 Wn.2d 259, 456 P.2d 340 (1969) the court explained the *Smith* decision by commenting that the court therein simply assumed the existence of serious prejudice and ordered a new trial.

Further, our conclusion—that the *Smith* court did not hold that in *all* cases the doubt must be resolved in favor of the accused—is reinforced by the cases quoted and cited within the opinion itself. The court relied primarily on the oft–cited case of *Lefco v. United States,* 74 F.2d 66 (3d Cir. 1934). In *Lefco,* the defendant, under the names "Morris Weinroth, alias E. Weinroth, trading as E. Weinroth," was charged with conspiracy to defraud by use of the mails. As partial proof of Weinroth's connection with the conspiracy, the prosecution introduced evidence that a bank account in the name of E. Weinroth showed deposits of checks drawn by other conspirators, but the prosecution failed to present evidence indicating that E. Weinroth, the payee and depositor of the checks, was the defendant Morris Weinroth; nor was there any evidence to prove that the two names were borne by the same person. Under that factual pattern the appellate court granted Weinroth a new trial and understandably declared (as quoted in *Smith*): "'That the errors were prejudicial, there can be no doubt.'"

All seven of the cases cited by the *Smith* court as being in "accord" denounce the practice of unnecessarily burdening an accused with a string of aliases, but *none* of those cases reversed a conviction because of that prosecutorial dereliction. In effect, therefore, the "accord" cases all hold that the use of aliases, under the fact pattern presented to the jury, constituted harmless error. *See generally* Annot., 87 A.L.R.2d 1217 (1963); *see also State v. Culp,* 5 N.C. App. 625, 169 S.E.2d 10 (1969). *See also United States v. Beedle,* 463 F.2d 721 (3d Cir. 1972) where the court, having already found prejudicial error on another theory, determined that a trial court, informed of an inadvertent trial use of an alias, should have granted the accused's motion to remove the alias. The court was content to assert simply: "This too was error," but did not feel compelled to categorize the error as prejudicial.

Finally, not every departure from constitutional procedures (assuming there was such a departure in the case at bench) results in an automatic reversal regardless of the weight of the evidence. *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969). A defendant in a criminal trial is entitled to a fair and impartial trial, but not a perfect one, for there are no perfect trials. *Brown v. United States,* 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973).

Under the fact pattern in the case at bench, it would be preposterous for this or any court to declare that Mr. Rose was denied a fair and impartial trial because the jury was advised, incorrectly, that he was also known as Stanley Abel.

Judgment affirmed.

REED, J., and JOHNSON, J. Pro Tem., concur.

Petition for rehearing denied May 4, 1977.

Review denied by Supreme Court October 24, 1977.