**William E. JOHNSON, a/k/a Bill Robinson, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12046.**

District of Columbia Court of Appeals.

Argued April 4, 1978.

Decided July 21, 1978.

Geraldine R. Gennet, Washington, D. C., appointed by this court, for appellant.

Daniel A. DeRose, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George and Alexia Morrison, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and YEAGLEY and MACK, Associate Judges.

PER CURIAM:

Appellant was convicted under a single count indictment with making, drawing or uttering a check with intent to defraud in violation of D.C.Code 1973, § 22–1410. In this appeal he urges that the trial court committed reversible error in admitting evidence, permitting impeachment of testimony, and refusing to conduct a voir dire to determine whether there had been improper jury exposure.

The first witness at trial was Mr. Jessie Myers, shipping manager and salesperson for a furniture store in Georgetown called the Door Store. Mr. Myers testified that appellant and two other persons came into the store on August 4, 1975, in order to purchase chairs. These three were the only customers in the store, and spent approximately forty minutes making a selection. They selected four Chippendale chairs, for which appellant wrote a check for $657.30. Appellant said that he did not have a driver's license, but proffered as identification a Perpetual Building Association card and a Sears Roebuck Account card. The Perpetual Building Association card included a photograph of appellant. The check and the two items of identification all carried the name William E. Johnson. Appellant gave his address as 1111 H Street, N.W. The check was returned by the bank unpaid, and Mr. Myers made unsuccessful attempts to locate appellant. Eventually, the police were notified. A detective contacted Mr. Myers seven or eight months after the offense and showed him a spread of nine photographs. Mr. Myers indicated appellant's photograph saying "This is probably the man. But I couldn't be sure." Mr. Myers made a positive in-court identification of appellant.

An expert in the field of handwriting analysis took the stand to testify for the government. At this point the government attempted to introduce its exhibit No. 7, a sheet of paper on which had been copied (1) writings taken from selected portions of appellant's handwriting exemplar cards, (2) the check in question, and (3) signatures taken from appellant's lineup sheets and fingerprint cards relating to a former arrest. The signatures included the name "Bill Robinson," written in three places. Counsel for the appellant objected to the admission of the exhibit, arguing that proof of the use of an alias would be highly prejudicial, yet irrelevant in a case where appellant was charged with writing a bad check on his *own* account. Counsel for the appellant suggested that the expert testify as to his opinion that appellant wrote the

check, but not as to the factual basis for his opinion. The court ultimately overruled the objection and admitted the exhibit into evidence. The expert went on to express the opinion that it was "probable" that appellant wrote the body of the check, and that he "positively" wrote his name as payer. The expert could only say that appellant probably wrote the body of the check because the handwriting samples with which he compared them had been written in a distorted, awkward style which indicated to the expert that they were meant to be disguised.

The government's final witness was the assistant cashier at the National Bank of Washington, who identified the check in question, and testified that the account on which it was drawn was opened on December 5, 1974, and closed on December 30 of the same year.

Appellant, on the other hand, testified that the house in which he lived had been burglarized in mid-June of 1975, and his personal identification cards, checks and charge plates, among other things, had been stolen. Checks drawn on the closed account had been taken; also appellant stated that he had signed two of the checks without filling them out so that the person with whom he shared the house could use them to make emergency payments in his absence. On cross-examination, the government was allowed to ask:

> Mr. Johnson, are you the same William Eugene Johnson who was convicted in the name of Bill Robinson in 1968, for forgery and uttering, in the United States District Court for this jurisdiction, in case Number 19967?

I.

Specifically appellant contends that the trial court erred (1) in admitting xeroxed copies of his true signature and alias as a part of exhibit 7; (2) in admitting appellant's photograph, with his alias and true signature written on the back, as exhibit 3;

and (3) in allowing the government to impeach appellant with a prior conviction under the alias.

■ Appellant relies heavily on *Leigh v. United States*, 113 U.S.App.D.C. 390, 308 F.2d 345 (1962). That court found prejudicially erroneous, in a prosecution for forgery, the reception into evidence of an exhibit consisting of a card completed voluntarily by the accused while in custody on which he had listed prior arrests. Even though it was not clear that the jury saw the card, the court concluded that under the circumstances the admission was erroneous, as the objectionable words could easily have been blocked out or eliminated. The distinction between that and the instant case is readily apparent. Here, the exhibits included only names, or names and addresses, which, the jury was told, were written by appellant "in the normal course of business."

We do agree with appellant, however, to the extent that we feel the use of the alias was questionable. It served no useful purpose that could not have been achieved with less potential for prejudice. Appellant was charged with writing a bad check on his own account and in his true name. With respect to exhibit 7, appellant's counsel proposed that the handwriting expert testify that he had examined the writing samples and in his opinion they were identical to the writing on the check without disclosure of the underlying facts as provided for by Fed.R.Evid. 705.* Counsel indicated that she would not cross-examine on that point. Or, as was suggested in *Leigh*, the alias itself could easily have been deleted, and the other signatures used for purposes of analysis. The alias written on the back of the photograph in exhibit 3 could also have been deleted.

With respect to the impeachment of appellant with a prior conviction under the alias, the government contends that this was proper because the identification of the

appellant as the same person was critical. However, the record clearly reflects that there was no indication that appellant intended to deny his conviction; in fact, counsel for the appellant indicated several times that appellant would (and indeed did) freely acknowledge that the conviction was his. Appellant could thus simply have been asked "Are you the same person who was convicted of forgery and uttering in 1968 in Case No. 19967?"

Courts have held that use of an alias which serves no useful purpose is error. *State v. Randall*, 8 Ariz.App. 72, 443 P.2d 434 (1968). *See also United States v. Beedle*, 463 F.2d 721 (3d Cir. 1972). "[T]he practice has been several times condemned. [Where] [n]o issue could come up as to [appellant's] identity . . . an alias . . . can serve no purpose but to arouse suspicion that the accused is a person who has found it useful or necessary to conceal his identity." *United States v. Grayson*, 166 F.2d 863, 867 (2d Cir. 1948) (footnote omitted).

While deploring the practice of bringing an alias to the attention of a jury where its relevance is dubious at best, we do not find that it warrants reversal in this case. Juxtaposed against the use of the alias is the eyewitness identification of appellant as well as the positive testimony of an expert handwriting analyst. Thus, assuming error, we find no prejudice. *See Kotteakos v. U. S.*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

## II.

■ Secondly, appellant submits that the trial court erred in not questioning the jurors as to whether any of them observed the detention of defense witness Larry Bush in the hallway behind the courtroom. Mr. Bush had testified that there had been several burglaries at the home he had shared with appellant. In rebuttal, Mr. Myers had

---

* Fed.R.Evid. 705 provides as follows:

    The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

testified that Mr. Bush was with appellant at the scene of the crime. Thereafter, during a 15-minute break before closing argument, counsel for the appellant learned that the witness had been arrested on a bench warrant and was being detained in the hallway. When trial resumed, counsel informed the court that she had observed one of the jurors in the hallway where Mr. Bush was seated in a chair in the custody of the uniformed police officer, and that the witness had been clearly within the juror's view. The trial court questioned a Deputy United States Marshal who had observed the arrest; he stated that Mr. Bush was seated and not handcuffed when the jurors were excused, and that there was no indication that Mr. Bush was under arrest. The trial court then refused to voir dire the jury about the incident, noting that such action was unwarranted and would only serve to magnify it. It is true, as appellant points out, that in *Wilson v. United States*, D.C. App., 380 A.2d 1001 (1977) we mandated a more stringent procedure where it was appellant who was seen arrested. In that case, at the conclusion of his trial on charges of, *inter alia*, receiving stolen property, appellant was arrested for alleged participation in a fencing operation. He moved unsuccessfully for a new trial on the ground that several members of the jury had seen the arrest. In remanding, this court held that the trial judge was required to hold a hearing to determine the extent of the jury's knowledge of appellant's arrest while the first trial was still in progress. But even assuming that the same procedure is required where it is a witness who is arrested, there is no factual predicate here which would have required the trial court to take additional action. According to the uncontradicted testimony of both the detective who had previously testified and the Deputy United States Marshal, there was no indication that an arrest was being made. Under the circumstances, we can find no prejudice to appellant in the trial court's failure to voir dire the jury.

Accordingly, the judgment on appeal is

*Affirmed.*