**PETRILLI v. UNITED STATES.**

No. 12168.

Circuit Court of Appeals, Eighth Circuit.
July 8, 1942.

Bryan Purteet, of St. Louis, Mo., for appellant.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo. (David M. Robinson, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant was convicted of transporting stolen property of the value of $5,000 or more in interstate commerce, in violation of 53 Stat. 1178, 18 U.S.C.A. § 415.

He contends that the evidence is insufficient to support a conviction. A similar contention was urged, and held to be without merit, in the companion case of Russell v. United States, 8 Cir., 119 F.2d 686. In view of the earnest reassertion of the contention here, we shall repeat some of the demonstrative facts.

On the morning of February 7, 1940, a jewelry salesman named I. T. Slifkin was robbed of $12,900 worth of jewelry on a highway near Dallas, Texas. He was forced off the road by another automobile, from which two men emerged with a gun. They made Slifkin lie down in the rear of his own car, covered him up with some coats, and took possession of the brief case in which the jewelry was contained. They then drove his automobile northward toward Arkansas, but some five hours later they abandoned Slifkin and his car on the road, about 30 miles from the Texas-Arkansas border.

Early the next morning, near St. Louis, Missouri, about 20 hours after the robbery and 15 hours after Slifkin's release, two highway patrolmen observed a car, with three occupants, traveling at an excessive speed, and attempted to stop it. The driver crouched down in his seat and increased the speed of the vehicle. One of the other occupants attempted to cover up the rear window. The pursued car attained a speed of over 80 miles an hour. Suddenly it struck a rough spot in the road and skidded; its left front door was thrown open; and the car overturned. When the patrolmen reached the point a few seconds later, there were only two men in the car, both unconscious, one in the front seat and one in the rear. Appellant was found in a filling station driveway, about 75 feet away, cut, bruised and dazed. All three men were sent to the hospital for medical attention, but appellant and one of his companions escaped from the ambulance while it was on its way to the hospital. Appellant was apprehended a short time later.

Slifkin's brief case with the jewelry was found in the car, and he duly made an identification of all of the articles at the office of the highway patrol on the following day. The car also contained three revolvers, some of which were loaded, a liberal supply of extra ammunition, a metal saw, a "jimmy bar", several assortments of other tools, and an extra set of foreign license plates. There was a secret compartment in the side upholstering, operated by a concealed wire, in which part of the ammunition was stored.

At the time of the hold-up, the highwaymen had forced Slifkin to turn his face away, until they had succeeded in covering him up in the rear of the car, so that he was unable under the circumstances to make a personal identification of any of the bandits. Appellant did not take the witness stand, nor did he undertake to offer any other evidence in his own behalf.

The evidence which we have recited clearly was sufficient to warrant a jury in finding that appellant was guilty of the general elements of the offense charged, as against the contentions, made on motion for directed verdict and renewed here, that the proof did not show that appellant ever had possession of the property, or that he knew that it was stolen, or that he had actually engaged in interstate trans-

portation of it. Not alone could the jury find that appellant was an occupant of the car in which the stolen property was recovered, but it was entitled to infer, from the opened door on the driver's side, that he was in fact the operator of the fleeing vehicle. The presence of stolen property in an automobile, which is attempting to evade capture by pursuing officers, in a state that could only have been reached by a transportation of the property across the boundary line of another state, at a time reasonably immediate to the time of the theft, and with no exonerative explanation of any of the incidents involved, certainly is sufficient, as against the operator of the fleeing vehicle and its other occupants, to support a conviction for the interstate transportation of stolen property. See Husten v. United States, 8 Cir., 95 F.2d 168, 170; Drew v. United States, 2 Cir., 27 F.2d 715, 716; Wilson v. United States, 162 U.S. 613, 620, 16 S.Ct. 895, 40 L.Ed. 1090; Niederluecke v. United States, 8 Cir., 47 F.2d 888; Bruce v. United States, 8 Cir., 73 F.2d 972; Russell v. United States, 8 Cir., 119 F.2d 686.

Again, it is argued that the evidence ought to be held insufficient to sustain a conviction because the jewelry itself was not offered in evidence or produced in court. It was no more necessary, as a matter of legal principle, to produce the stolen property in court in order to establish the corpus delicti than it would be to exhibit the corpse in a murder case. The evidence showed that Slifkin had duly identified all the jewelry found in the wrecked car, while it was still in the hands of the state highway patrol. He testified that it constituted the property which had been stolen from him in Texas, except for five or six pieces which were missing, and that the indictment, which was handed him for examination while he was on the witness stand, correctly listed and described the stolen property. In addition, he had previously described generally the character of the articles stolen, and he had further produced a detailed list of the sixty-one several items, which he had prepared and was carrying with him as a personal inventory at the time of the robbery, and which was made available to appellant's counsel for purposes of comparison and cross-examination. No cross-examination as to particularity was engaged in, and there was no evidence to weaken or impeach Slifkin's general identification. In this situation, while the use of the indictment for identification purposes was perhaps not commendable practice, all of the evidence of identification together, which we have detailed, was sufficient to go to the jury and to sustain a conviction on the charge made in the indictment. There clearly was no variance between the indictment and the proof, as appellant suggests.

It is further contended that the evidence as to the value of the jewelry is insufficient under the rule of Husten v. United States, 8 Cir., 95 F.2d 168, but this contention is utterly without merit. Slifkin testified that at the time of the robbery the jewelry had a wholesale value of approximately $13,000. He placed a value on the five or six pieces, which were not recovered, of approximately $2,000. He further stated that the values which he had placed upon the articles were not alone the general wholesale value, but represented also the actual cost of the jewelry to him. It was shown by other testimony that the retail value of the jewelry would be considerably more than the wholesale value. In addition, a jeweler who had examined and appraised each item of jewelry, while it was in the possession of the highway patrol, testified that in his opinion the retail value of the recovered property was around $18,000. Certainly, all of this must reasonably be held to be sufficient to have enabled a jury competently to determine that the value of the property stolen and transported was $5,000 or more.

Appellant raises numerous other contentions, which have no more merit than those which have been discussed. There is no occasion to go on spelling out inescapable answers to patent propositions. Only one of the remaining contentions raised seems to us to be entitled to discussion. That contention is that, in reading to the jury the 28 aliases set forth in the indictment, over the objection of appellant, the prosecution "denied the defendant a fair trial and read such aliases with knowledge of its inability to prove them and with the covert purpose of creating an impression in the minds of the jurors that the defendant was a desperate criminal character."

The record shows that the Assistant United States Attorney who tried the case was allowed to read the indictment to the jury, without objection, down to and including 12 of the aliases set out therein. Thereupon appellant's counsel interrupted and

declared that "the defendant at this time serves notice upon the plaintiff that unless they prove these nicknames and the aliases, the defendant will move for a dismissal of the case for failure of proof". The Assistant United States Attorney replied, "I don't think that will be a ground for dismissal, Your Honor. We are going to prove these aliases." Counsel for appellant then added, "I want the record to show that we object at this time". The remainder of the indictment was allowed to be read to the jury, but the evidence which the prosecution offered in support of its case in no way tended to establish any of the 28 aliases. Appellant, as has previously been indicated, did not take the witness stand, nor did he offer any other evidence in his own behalf. At the close of the prosecution's evidence, he moved for a directed verdict on the general ground that "the Government has failed to make a case here", specifying as one of the bases for the motion that there had been no proof of the "so-called aliases".

■ The aliases set out in the indictment did not, of course, go to the gist or substance of the offense charged and were relevant in the first instance only for purposes of identification. The absence of evidence to establish such aliases in the present situation would therefore not entitle the accused to a directed verdict for alleged failure of proof of the essential elements of the crime. The injection of the aliases into the trial proceedings could only have significance here as a matter of misconduct or of general prejudice, which so substantially permeated and infected the atmosphere as to prevent the accused from having a fair trial. But counsel for appellant did not so evaluate the incident at the time that it occurred. His declaration then was, not that the reading of the aliases was prejudicial, as he now attempts to assert, but that, unless the aliases were proved, he would "move for a dismissal of the case for failure of proof." Again, in his motion for a directed verdict at the close of the evidence, he re-appraised the situation as in his view being merely one of having failed to substantiate the averments of the indictment. He referred to the reading of the aliases and said: "No proof whatever has been offered in support of that. In our view, there is an absolute failure of proof in this case * * *". At no place in the record do we find any competent objection during the course of trial to the reading of the aliases, as having been prejudicial, or any request for a mistrial.

■■ We do not, of course, mean to imply that the failure to make such a proper objection would necessarily preclude us from reviewing the incident as part of the trial processes, or that appellant's view of it at the time should be accepted as controlling in our appraisal of whether it had operated to prevent him from having a fair trial. Compare Read v. United States, 8 Cir., 42 F.2d 636, 645; Van Gorder v. United States, 8 Cir., 21 F.2d 939, 942. But appellant's evaluation of the incident, in the setting in which it occurred, measured by his treatment of it at the time, where it was without subsequent aggravation, is entitled to consideration in weighing its real significance in relation to the processes of the trial as a whole. Here there was no further reference to the aliases in either the evidence or the argument, and the court, on its own motion, told the jury in the instructions that they should "not consider such alleged aliases as were read in the indictment, or let it weigh in any way against the defendant that said names were read to you. Let there be no inference brought against the defendant from the fact that those names were read. I am now trying to instruct you so that you may withdraw that from your consideration". The circumstances of the trial, the evidence in the record, and the instructions of the trial court convince us that the fact that the alleged aliases were brought to the attention of the jury in the preliminary reading of the indictment did not so infect the trial proceedings as to require or justify a reversal of appellant's conviction. See Lau v. United States, 8 Cir., 13 F.2d 975, 976; 40 Stat. 1181, 28 U.S.C.A. § 391.

■ The preliminary reading of the aliases in an indictment is not a practice which should be encouraged in an ordinary criminal prosecution, but rather one which should be curbed. Where the trial court permits the indictment to be read to the jury, it can properly require that all reference to the aliases be omitted, until their relevance in the indictment and their competency on the trial have been properly developed in the proceedings. The accused on his part may seek to protect himself by such a direct request to the court. But where, as here, a reference to the aliases has crept into the proceedings, the situation on appeal will not be controlled by the application of any abstract principle, but by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole.

It should perhaps be added, as a matter of fairness to the prosecuting attorney, that the statement has been made here, in explanation of the declaration in the trial court that he intended to prove the aliases, that the government was prepared to establish, by certified records of prior convictions, all of the 28 aliases alleged in the indictment, for purposes of impeachment, had the accused attempted to take the witness stand in his own behalf.

Appellant having been convicted on a fair trial and abundant evidence, without prejudicial error, the judgment is affirmed.