[No. 34714.    Department Two.    January 21, 1960.]

THE STATE OF WASHINGTON, *Respondent*, v. MABEL SMITH, *Appellant*.[1]

*J. Edmund Quigley*, for appellant.

*Charles O. Carroll, James J. Caplinger*, and *Anthony Savage, Jr.*, for respondent.

FOSTER, J.—Appellant, defendant below, appeals from a conviction of grand larceny. She assigns error in the admission of business records and in allowing the court's instructions with unproved aliases typed on the cover sheet

[1] Reported in 348 P. (2d) 417.

and on the verdict forms to go to the jury. Failure of proof of some elements of the crime is also claimed.

Appellant was employed by the Mode O'Day store in Seattle in April, 1957, and became store manager two weeks later. Among other duties, she was entrusted with the daily safekeeping, recording and banking of the sales receipts of the store. A review of the business records on September 11, 1957, disclosed that a number of deposits had not been made, and there was a large shortage of money. A member of the Seattle police department and a deputy prosecuting attorney both testified that appellant admitted taking the money.

The instructions, to which no exceptions were taken, adequately dealt with every element of the crime charged. There was adequate proof of every phase of the offense.

Only the witness Clinger identified the original sales records for each of the store's business days from August 1, 1957, to September 11, 1957. The objection was that Clinger was not qualified.

RCW 5.45.020 provides:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of the information, method and time of preparation were such as to justify its admission."

Appellant herself was the custodian of the records. She argues that Clinger does not come within the meaning of the statutory phrase "other qualified witness." The relevant inquiries are: Was the witness Clinger competent to testify that these records were made in the ordinary course of business, and what their mode of preparation had been? Could he identify these as the records that were so prepared? *Cantrill v. American Mail Line,* 42 Wn. (2d) 590, 257 P. (2d) 179; *Morrison v. Nelson,* 38 Wn. (2d) 649, 231 P. (2d) 335.

Clinger owned this store and was employed by

the Mode O'Day Corporation to supervise other shops in the area. While he was not very active in the management, there is little doubt that he was familiar with the Mode O'Day business in general and this store in particular. The testimony discloses that it was under his general supervision that these records were prepared in the regular course of business, and that he had intimate knowledge of the mode of preparation. The particular records were taken by Clinger from their customary place of deposit in the shop. In short, far from abusing its discretion, the trial court followed the statutory mandate. The witness was qualified, and the records were properly admitted. *Cantrill v. American Mail Line, supra; Morrison v. Nelson, supra; Murgatroyd v. Dudley,* 184 Wash. 222, 50 P. (2d) 1025; *Pioneer Sand & Gravel Co. v. International Contract Co.,* 70 Wash. 123, 126 Pac. 84; McCormick on Evidence, 605, §§ 288, 289; 29 Wash. L. Rev. 126.

The information charged that defendant used a series of names. At the close of the evidence, the court attempted to remove the unproved aliases, but, by mistake, the aliases went to the jury on the cover sheet of the instructions and on the verdict forms. Appellant claimed prejudice, but her motion for a new trial was denied.

It is admitted that submitting the aliases to the jury was error, but the state claims no prejudice resulted. It is common knowledge that the use of aliases is frequently associated in the public mind with the so-called "criminal" class. We cannot assume that the jury was unaffected by the unproved aliases. To do so would be sheer speculation. The doubt must be resolved in favor of the accused.

In *Lefco v. United States* (C.C.A. 3rd), 74 F. (2d) 66, the United States court of appeals stated:

"That the errors were prejudicial, there can be no doubt. To draw an indictment for submission to . . . a petit jury by adding an alias to the name of the accused when the draftsman is without evidence to connect one with the other tends unduly to . . . incite the petit jury to prejudge the case. . . ."

Accord: *United States v. Grayson,* 166 F. (2d) 863; *United States v. Monroe,* 164 F. (2d) 471; *United States v. Solowitz,* 99 F. (2d) 714; *D'Allessandro v. United States,* 90 F. (2d) 640; *United States v. Brandt,* 139 F. Supp. 367; *People v. Maroney,* 109 Cal. 277, 41 Pac. 1097; *Commonwealth v. Torrealba,* 316 Mass. 24, 54 N. E. (2d) 939.

While the error occurred by mistake, appellant may well have been deprived thereby of a fair trial. The state's contention that the error was cured by a single question by defense counsel during *voir dire* cannot be sustained. In *People v. Klukofsky,* 201 Misc. 457, 114 N. Y. S. (2d) 679, the court said:

"Certainly, the term [alias] has not been used with the intention of impairing in any way the rights of the defendant, and we should be extremely reluctant to conclude that in the final result there has indeed been any substantial impairment. However, we would be less than realistic if we did not appreciate that over a period of time the term 'alias' has come to connote in the public mind some previous criminal activity. If that be true, the constant repetition of the word 'alias' might well produce a mental reaction unfavorable to a defendant . . . The question, we think, is not necessarily, 'Does it', but, 'Is it a reasonable assumption that it would?' "

Reversed and a new trial ordered.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.