443 P.2d 434

**STATE of Arizona, Appellee,**

v.

**James RANDALL, Appellant.**

**No. 2 CA–CR 118.**

Court of Appeals of Arizona.

July 3, 1968.

Rehearing Denied Aug. 15, 1968.

Review Denied Oct. 8, 1968.

Darrell F. Smith, Atty. Gen., Phoenix, by Carl Waag, Asst. Atty. Gen., for appellee.

Ronald W. Sommer, Tucson, for appellant.

KRUCKER, Judge.

James Randall, together with Cody Blackmon, was charged in an information with the crime of petty theft, in which a prior felony conviction was alleged, increasing the penalty under the provisions of A.R.S. § 13–1649. The prior felony conviction alleged in the information was admitted by the defendant. The information charged the defendant under the name of James Randall aka Robert Clayton Mahone. Trial before a jury resulted in a conviction on August 31, 1967.

Judgment of guilty was entered on September 13, 1967, and from this judgment and order denying a motion for a new trial, this appeal is taken.

The first question raised on the appeal is whether it was error to inform the jury that the defendant had been known by an alias when such information is not essential to identification of the defendant by witnesses nor necessary to show an element of the crime charged.

At the outset of the case, in chambers before the reading of the charges and the empaneling of the jury, defendant's counsel moved the court to omit the defendant's alias of "Robert Clayton Mahone" at the reading of the information, which motion the court denied. The Rules of Criminal Procedure, A.R.S. 17, provide in part:

"Rule 117. Name of defendant

A. In an indictment, information or bill of particulars, it is sufficient for the purpose of identifying the defendant to state his true name, or to state the name, appellation or nickname by which he has been or is known, or, if no better way of identifying him is practicable, to state a fictitious name, or to describe him as a person whose name is unknown, or in any other manner. In stating the true name, or the name by which the defendant has been or is known, or a fictitious name, it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.

\*        \*        \*        \*        \*        \*

C. If in the course of the proceedings the true name of a person indicted or informed against otherwise than by his true name is disclosed by the defendant to the court, or appears in some other manner to the court, the court shall cause the true name of the defendant to be inserted in the indictment, information or bill of particulars and record of the proceedings wherever his name appears otherwise therein, and the proceedings shall be continued against him in his true name."

And Rule 161:

"Rule 161. True name on arraignment

When the defendant is arraigned, he shall be informed that if the name by which he is charged is not his true name he must then declare his true name, or be proceeded against by the name in the indictment or information. If he gives no other name, the court may proceed accordingly. If he alleges that another name is his true name, the court shall direct an entry thereof in the minutes and record of the arraignment, and the subsequent proceedings may be had against him by that name, referring also to the name by which he was first charged."

Both parties cite Antone v. State of Arizona, 49 Ariz. 168, 65 P.2d 646 (1937), which appears to be the only case in this jurisdiction dealing with the precise question. In *Antone*, it is stated:

"* * * Where a person is known by several names, it has always been the practice to indict him or inform against him under all of such names. We think this is permissible. He may on his arraignment give the name he wishes the proceeding to be carried on in, and it is then * * * the duty of the court to have 'subsequent proceedings' in that name."

The word "alias" was not used in the case before us. The caption of the information read "James Randall aka Robert Clayton Mahone." The minute entry in the arraignment June 20, 1967, indicates the following:

"* * * Both Defts. true names as stated. Deft. JAMES RANDALL, aka ROBERT CLAYTON MAHONE is sworn and questioned by the Court re his ability to employ counsel. * * * Deft. RANDALL enters a plea of 'Not Guilty', does not waive the 60-day trial period and admits the prior conviction. * * *"

Appellant relies heavily on the case of State of Washington v. Smith, 55 Wash.2d 482, 348 P.2d 417 (1960), wherein the Supreme Court of Washington reversed a conviction because the trial court inadvertently allowed unproved aliases to go to the jury in the reading of the instructions and on the verdict forms stating that it constituted prejudicial error. The Washington Court notes that it is common knowledge that the use of aliases is frequently associated in the public mind with so-called "criminal" classes and that the reviewing court could not assume that the jury was not affected by unproved aliases which appeared on the verdict forms and in the information, and any doubt as to the prejudicial effect must be resolved in favor of the defendant. Also see, Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); and Petrilli v. United States, 129 F.2d 101 (8th Cir. 1942).

■ Under the statement in *Antone*, supra, the statement that it is the duty of the court to have subsequent proceedings in the true name, particularly where requested under the rules and where request was, we think, timely made by defense, the rule should be followed. We appreciate that no case should be reversed because of technical error, A.R.S. Constitution, Art. VI, § 27, and State v. Dutton, 83 Ariz. 193, 318 P.2d 667 (1957), but we feel that the prejudice here is sufficient to warrant a reversal.

We will deal with the other questions presented on appeal in order to perhaps facilitate the work of the trial court in the event of a retrial of this action.

■■ The second question presented by the appellant is as follows:

"Is it error to refuse a motion for new trial when the prosecuting attorney, during rebuttal argument, made a statement of opinion based on the assumption of a fact which had no support in the evidence and could not have been proven for the reason that it did not exist?"

Appellant does not point out in his brief the exact statements to which objection is made, and we therefore cannot pass upon the entire argument and say that a new trial should have been granted because of statements that might have been made. A prosecutor is allowed considerable latitude in discussion of the evidence and making reasonable inferences therefrom. State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962). Suffice to say that rebuttal argument should confine itself to answering issues brought up in the argument of the defense counsel and should serve no other purpose. 88 C.J.S. Trial § 169, at 339.

Defendant contends that the trial court committed reversible error in giving an instruction on flight. The contention is that there was no substantial evidence in the record to support the instruction on flight. We must agree. It appears that the two defendants had driven their automobile

near a fence in back of the business where certain copper wire was alleged to have been stolen. The automobile became stalled in the sand and the two defendants were apprehended unloading wire and putting it back in the yard. · The police were called and upon their arrival, the defendants were no longer there, having abandoned the car. There is some testimony that the defendants went to get a truck to extricate their.stalled car. The instruction given was as follows:

"The flight of a person immediately after he is accused of a crime is not sufficient in itself to establish his guilt, even if you find that in fact a crime was committed, but is a fact which, if proved, may be considered by you in the light of all of the other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination."

■ In the recent case of State v. Rodgers, 103 Ariz. 393, 442 P.2d 840 (June 19, 1968), vacating State v. Rodgers, 7 Ariz.App. 29, 435 P.2d 864 (1967), the Supreme Court quoted from State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963) wherein the Court stated:

"* * * Ordinarily, unless the flight or attempted flight be open, as upon immediate pursuit, the element of concealment or attempted concealment is considered a necessary component."

There is no evidence of pursuit or concealment or attempt of concealment, and we hold that the instruction on flight was erroneous.

■ The next question raised by appellant is that it was error for the court to instruct the jury that when determining the question of defendant's guilt they could take into consideration "false, contradictory or misleading" statements, when there was introduced no evidence that appellant had ever made such statements. The instruction was as follows:

"Evidence, if any, that a defendant on one or more occasions other than on the witness stand, made false, contradictory or misleading statements concerning the charge against him which is now being tried, may be considered by the jury as a circumstance tending to prove a consciousness of guilty, but is not sufficient of itself to prove guilt. The weight to be given to such a circumstance, and the significance, if any, to be attached to it, are matters for the jury to determine.'"

The evidence was that the co-defendant,. Cody Blackmon, had made contradictory statements to a police officer about being at the scene of the alleged crime. This. court believes that while the instruction given is acceptable, there should have been a warning instruction by the court that such statements only apply to the person. making them.

It is evident that the statements were not made by the appellant or in his presence and the instruction as given would not apply to appellant.

For the reasons stated, the judgment of the trial court is reversed and remanded for a new trial.

HATHAWAY, C. J., concurs.

MOLLOY, Judge (dissenting).

I am unable to agree with the disposition accorded this case by the majority opinion: remanding the case for another trial.

While I agree that it would have been better to have stricken the "aka Robert Clayton Mahone" from the information filed when this matter was called to the court's attention, and that it would have been better to have eliminated from. the court's instructions the "flight" instruction;. I can see no abuse of discretion on the court's part nor error of sufficient import to require reversal.

At the time of his arraignment, the defendant acknowledged that the name under which he was charged was his "true name." That he is not a stranger to this alias is indicated by the record of the prior felony

conviction to which he admitted, which is in exactly the same name as used in the instant information.

The Rules of Procedure to which the trial court was attempting to comply are at least ambivalent on the question of whether the alias should have been stricken. Rule 161, Rules of Criminal Procedure, under which the indictment was conducted, provides that, if the defendant alleges another name is his "true name," other than the one under which he is charged, " * * * the subsequent proceedings may be had against him by that name, *referring also to the name by which he was first charged.*" (Emphasis added.)

Assuming that it was error not to strike this other name, I believe this defendant was accorded a fair trial, despite any error in this regard. Our state constitution contains the mandate: "No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz.Const. art. 6, § 27. This jury was given a number of charges by the court which must have impressed it with its solemn duty not to convict on any other basis than the evidence produced in court. Among such instructions was the following:

> "As you were told earlier, an Information is but a formal method of accusing the defendants of a crime. It is not evidence of any kind against the accused and does not create any presumption or raise any inference of guilt. The law presumes a defendant to be innocent of crime, thus a defendant, although accused, begins the trial with a clean slate and with no evidence against him. The law permits nothing but legal evidence presented before you, the jury, to be considered in support of any charge against the accused, so the presumption of innocence alone is enough to acquit a defendant unless, you the jurors, are satisfied beyond a reasonable doubt after hearing the evidence and from all of the evidence in the case.

* * * * * *

> "Keep constantly in mind it would be a violation of your sworn duty to base a verdict in this case upon anything but the evidence in the case. * * *"

Years of experience on the trial bench lead me to believe that jurors are not apt to convict on suspicion or because a person might happen to have a second name under which he is also known.

These observations as to the seriousness of the violation in regard to the name under which the defendant was charged are equally pertinent to the flaw found by the majority opinion in the giving of an instruction on inconsistent statements. The instruction, in my view, does not assume that any such inconsistent statements were made by anyone. That the instruction had any appreciable effect on the outcome of this case is an unmerited assumption.

As to the flight instruction, the latest view of our Supreme Court indicates that such an instruction is proper when there is evidence of "flight" as opposed to "mere departure." State v. Rodgers, 103 Ariz. 393, 442 P.2d 840 (June 19, 1968). In *Rodgers*, our Supreme Court adopts with approval a definition of flight as given in People v. Herbert, 361 Ill. 64, 73–74, 196 N.E. 821, 825 (1935):

> "Flight, in criminal law, is defined as 'the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. *The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest.* (Emphasis in original.) Such consciousness and purpose is that which gives to the act of leaving its real incriminating character.' "

It is certainly within the possible inferences of this evidence that this defendant and his codefendant did more than merely depart from this scene. The giving of an instruction should be approved if, viewing the evidence favorably to support the in-

struction, it is justified. Reichardt v. Albert, 89 Ariz. 322, 361 P.2d 934 (1961). Under at least one theory of the evidence, the defendants were accosted on a Saturday morning by the manager of the industrial plant from whose fenced yard 20–25 coils of copper wire remnants had been taken. Their car was struck on the side of an arroyo near the plant and the wire was in the back of their car. The defendants informed the manager that, if he would not call the police, they would put the wire back, which they proceeded to do. The police were called, and when they arrived, the defendants were nowhere to be seen. The defendants never returned to get their car and they were not apprehended until several days later. The codefendant told the story at the trial that he and the defendant had, on the morning of the offense, gone to get a truck to remove this car from the scene, and that, when they returned, they saw so many policemen around, they left without approaching the car. Their motive in so doing, according to the codefendant was:

"A Well, there was so many polices was there so that naturally, you know, I didn't want to be involved with the police, we was afraid to go there, so we just—

"Q Why were you afraid of the police?

"A Because they probably wouldn't believe our story that we had been there that night before."

The circumstances here are sufficiently differentiating from the *Rodgers* case that I believe a different conclusion as to the propriety of the "flight" instruction is justified.

It is my opinion that a review of this record by rational men will indicate the defendant was given his day in court and was fairly tried and convicted. Many hours of this trial were devoted to painstaking efforts to keep from the jury evidence improper under the many decisions of the Supreme Court of the United States which have been rendered in recent years to protect the rights of those accused of crime. One mistrial of this case has already occurred because of the rocks and shoals of these opinions. While circumnavigating these pitfalls, this trial judge may have erred as to some of the niceties of criminal trial procedure required by the law of his own state.

By the time this action is retried, one must estimate there will be several thousand man-hours of the time of our citizens devoted to the question of guilt here presented. We may soon reach the place where it is just not worthwhile to charge anyone with anything but the most heinous of crimes. Owners who have been victimized by thefts, and policemen on the beat, may come to the point where they turn their backs on many offenses rather than become involved in the entanglements of a modern criminal trial.