OPINION
BIRDSALL, Chief Judge.
The appellant was found guilty by a jury of two counts each of armed robbery, kidnapping and aggravated assault, and one count of first degree burglary. All of these convictions arose out of an incident at a retail show store in Tucson on June 23, 1982. The appellant was sentenced to prison for concurrent 21-year terms on each of the robbery counts, concurrent 21-year terms on each of the kidnappings to be served consecutively to the robbery sentences, and concurrent 15-year terms on each of the assaults and the burglary, the latter three sentences to be served consecutively to the robbery and kidnapping sentences. These were aggravated sentences which resulted from the court’s findings on the infliction of serious physical injury, the use of a deadly weapon and dangerous instrument, that the crimes were especially cruel and depraved, and that the appellant was released on bond when the crimes were committed.
The appellant contends the trial court erred in denying his motions 1) to suppress, 2) for judgment of acquittal, 3) for mistrial because of testimony referring to him by an alias, and 4) for a new pre-sentence and a new mental health evaluation. Appellant also contends that the sentences were excessive. We affirm.
The evidence giving rise to the convictions shows that the appellant, pretending to be a customer, was in the shoe store at closing. The only others present were a female clerk who was waiting on him and a male employee. The appellant tried on a pair of blue sneakers. As he was walking around the store in those shoes, he came up behind the female, grabbed her around the neck and pressed a knife against her side. He then ordered the man to put his hands in his pockets and go to the office. He followed with the female. He ordered them to give him money from the safe, but this was never done. Instead the man was ordered to lie down on the floor with the female on top of him. The appellant then sat on top, straddling the two. He then struck the man and stabbed both of them numerous times. They were both seriously injured. The male employee resisted and struggled with the appellant, who then crashed through the store window and left. Two knives were found in the doorway to the office. The shoes appellant was wearing when he came in the store and removed to try on the new ones were also left at the scene.

Motion to Suppress

Three days following the crimes, a detective petitioned for and obtained an order authorizing temporary detention of the appellant for the purpose of obtaining photographs and finger and palm prints. In that petition the detective said that the appellant had been tentatively identified as the perpetrator of the crimes by the following:
“(2) That I contacted an 88-Crime caller, whom does not wish to be identified, who states that she knows an acquaintance by the name of TIM JOHNSON and that she knows that he also goes by the name of PAUL RAMON and GREG STANHOPE, that this subject states that he skipped bail on an assault charge out of California. She describes this subject as being a while (sic) male in his twenties, about 5'6" with brown hair and a *91 stocky build. She further states that she saw and had a conversation with this subject on Thursday, June 24, 1982. At this time she described the subject as having two fingernail type scratches on his face, an abrasion and bruise on his leg, and that one of his thumbs was swollen and bruised. That she had a conversation with the subject and that he states that on Wednesday he had been out walking between the hours of 8:30 and 10:30 and that his shoes were stolen and that he received the injuries when he fell down. She went on to further describe the subject’s temperment (sic) as that ‘he gets mad in a hurry’. This 88-Crime caller, who wishes to remain anonymous, looked at photographs that we have of the suspect’s shoes which were recovered at the scene of the robbery shortly thereafter. The caller identified these as being similar to the shoes, if not the same ones, that were ‘stolen from TIM JOHNSON’.”
The petition also related that usable prints were found at the crime scene and that the female victim thought she could identify the criminal.
A.R.S. § 13-3905 provides that an order for temporary detention to obtain physical characteristics may be issued upon a showing of:
“1. Reasonable cause for belief that a specifically described criminal offense punishable by at least one year in the state prison has been committed.
2. Procurement of evidence of identifying physical characteristics from an identified or particularly described individual may contribute to the identification of the individual who committed such offense.
3. Such evidence cannot otherwise be obtained by the investigating officer from either the law enforcement agency employing the affiant or the criminal identification division of the Arizona department of public safety.”
There can be no question that these three conditions were satisfied and that the magistrate was thus authorized to enter the order. Our supreme court has held that probable cause that the suspect committed the crime is not a necessary requirement for a detention order. State v. Grijalva, 111 Ariz. 476, 533 P.2d 533 (1975), cert. denied, 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975). The test is whether the detention is reasonable. Long v. Garrett, 22 Ariz.App. 397, 527 P.2d 1240 (1974); see also In Re Pima County Anonymous, Juvenile Action No. J 24818-2, 110 Ariz. 98, 515 P.2d 600 (1973), cert. denied, 417 U.S. 939, 94 S.Ct. 3063, 41 L.Ed.2d 661 (1974). The reasonable cause shown by the petition included the description of the perpetrator from the victim compared to that of the appellant as given by the informant, the informant’s observation of the “fingernail type scratches” on his face and the injury to his leg and the informant’s identification of the shoes in the photograph. The injuries observed the day after the crime fit within the victims’ description of the struggle at the scene and the appellant’s escape. Compare State v. Grijalva, supra.
In addition, an anonymous “crime stop” caller is entitled to greater credibility than the usual police informant. State v. Turney, 134 Ariz. 238, 655 P.2d 358 (App. 1982); State v. Summerlin, 138 Ariz. 426, 675 P.2d 686 (1983).
The legality of the detention order is most important because of all the evidence which was subsequently obtained. Both victims identified the appellant from a photo lineup which included a photo of appellant obtained as a result of the order. A search warrant was then obtained for clothing, a grey sweatshirt, shoes, knives, glass particles, articles of identification and mail, and other items of evidentiary value in the appellant’s apartment. During service of the detention order the officers had observed a new pair of tennis shoes. These shoes were brown with white stripes, whereas the new shoes he was wearing when he escaped from the store were blue with white stripes. However, the appellant told the officers there would be a fairly *92 new pair of blue shoes with white stripes at his apartment. Obviously the other objects of the search warrant might logically be found in the apartment.
During service of these court orders the appellant, after waiving his Miranda rights, made various exculpatory statements. The search of the apartment resulted in the seizure of both pairs of shoes, clothing resembling that worn by the robber, identification of him, a Kinney’s shoe horn and two forks with wooden handles similar to the two knives left in the store.

Sufficiency of the Evidence

There is no question that the crime occurred. The only argument appellant makes is whether the state proved he was the criminal. The test is whether there was no substantial evidence to warrant a conviction. Rule 20, Arizona Rules of Criminal Procedure, 17 A.R.S.; State ex rel. Hyder v. Superior Court, 128 Ariz. 216, 624 P.2d 1264 (1981).
The evidence more than satisfies this standard. Besides that which we have already mentioned, i.e., the identification by both victims, the scratches on his legs which could have resulted from going through the window, the new blue and white shoes found in his apartment, the forks which were the same brand and similar to the knives, and the scratches on his face, there were additional incriminating facts. A latent fingerprint found on one of the two knives was identified as his, the blue shoes had a trace of human blood, and he was caught in a number of inconsistencies and unbelievable explanations. The trial court did not err when denying the motion for acquittal.

The Alias

In Tucson and throughout the proceedings leading to his arrest, the appellant was known as Timothy Johnson. As a result of the search it was learned he also went by other names. The indictment charged Timothy Johnson, aka Paul Ramon and aka Gregory Allen Stanhope. At arraignment it was learned his true name was Stanhope. The trial judge directed that his other names not be mentioned. However, a police officer did testify that he was standing by at the apartment of Tim Johnson. A mistrial motion was denied. Later another witness referred to him as Tim. Again the court denied a motion for mistrial. Later, without prejudice to his motions, defense counsel stipulated that the jury could be told the appellant was using the name Johnson at the time of the events and the jury was admonished not to consider that as any evidence of guilt.
At the time of the order precluding the use of the alias names, the trial court recognized it might be difficult to obey. The Johnson name was used throughout the early proceedings. For example, it was the name on the fingerprint card. A mistrial is a serious remedy. The trial court is given wide discretion and its ruling will not be disturbed absent plain abuse. State v. Christensen, 129 Ariz. 32, 628 P.2d 580 (1981). We find no such abuse here.
Two prior Arizona decisions have considered the injection of alias names of a defendant in criminal trials. In Antone v. State, 49 Ariz. 168, 65 P.2d 646 (1937), the defendant was informed against as George Antone, alias George Johnson. He gave his true name at arraignment as Antone and subsequent proceedings were conducted in that name except that witnesses referred to him by both names and apparently in voir dire examination of prospective jurors his own attorney brought out the fact that he had previously been charged with murder under the name Johnson. In that case the supreme court found no reversible error, but said that when the defendant at arraignment gives “the name he wishes the proceeding to be carried on in”, it is then, under Sections 4979 and 4982, Rev.Code of 1928, the duty of the court to have “subsequent proceedings” in that name.
Those 1928 statutes do not appear as such in the Arizona Revised Statutes, but their provisions were contained in former Arizona Rules of Criminal Procedure. Rule 117(C) provided:
*93 “If in the course of the proceedings the true name of a person indicted or informed against otherwise than by his true name is disclosed by the defendant to the court, or appears in some other manner to the court, the court shall cause the true name of the defendant to be inserted in the indictment, information or bill of particulars and record of the proceedings wherever his name appears otherwise therein, and the proceedings shall be continued against him in his true name.”
and Rule 161:
“When the defendant is arraigned, he shall be informed that if the name by which he is charged is not his true name he must then declare his true name, or be proceeded against by the name in the indictment or information. If he gives no other name, the court may proceed accordingly. If he alleges that another name is his true name, the court shall direct an entry thereof in the minutes and record of the arraignment, and the subsequent proceedings may be had against him by that name, referring also to the name by which he was first charged.”
These rules were in effect when this court decided State v. Randall, 8 Ariz.App. 72, 443 P.2d 434 (1968), Judge Molloy dissenting. In that opinion the conviction was reversed because the trial court refused to omit the defendant’s alias at the reading of the information which contained it. The court relied upon Antone and also cited State of Washington v. Smith, 55 Wash.2d 482, 348 P.2d 417 (1960). The latter opinion was apparently cited for its explanation of the reason why the jury should not be told about alias names. Randall says:
“... The Washington Court notes that it is common knowledge that the use of aliases is frequently associated in the public mind with so-called ‘criminal’ classes and that the reviewing court could not assume that the jury was not affected by unproved aliases which appeared on the verdict forms and in the information, and any doubt as to the prejudicial effect must be resolved in favor of the defendant.” 8 Ariz.App. at 74, 443 P.2d 434.
The only provision of former Criminal Rules 117(C) and 161 pertaining to the name of the defendant which is carried over in the 1973 Rules of Criminal Procedure, 17 A.R.S., is found in Rule 4.2(a)(1). That rule, in pertinent part, says only that at the defendant’s initial appearance the court shall “Ascertain the defendant’s true name ... and, if necessary, amend the formal charges to reflect it____” Thus the
language relied on in Antone, that “subsequent proceedings” shall be in that name is omitted. We do not find that significant since we believe the law to be that the fact of alias names should be kept from the jury unless relevant for some purpose. See Petrilli v. United States, 129 F.2d 101 (8th Cir.1942) U.S. cert. denied, 317 U.S. 657, 63 S.Ct. 55, 87 L.Ed. 528 (1942); United States v. Wilkerson, 456 F.2d 57 (6th Cir. 1972) U.S. cert. denied, 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972), Annotation 87 A.L.R.2d 1217.
However, these authorities do not hold that the mere injection of an alias into the evidence is reversible error. In Petrilli the court held that the evidence must be weighed in consideration of its real significance in relation to the trial as a whole. There, as here, the jury was instructed not to consider the aliases against the defendant. The Petrilli opinion concludes:
“... The circumstances of the trial, the evidence in the record, and the instructions of the trial court convince us that the fact that the alleged aliases were brought to the attention of the jury in the preliminary reading of the indictment did not so infect the trial proceedings as to require or justify a reversal of appellant’s conviction.” 129 F.2d at 104.
Likewise in United States v. Wilkerson, supra, the court found no reversible error even though it appeared that the principal use of the aliases was to indicate to the jury that people who use aliases are inherently suspect. Both Petrilli and Wilker *94 son strongly disapproved the practice of using aliases.
Our opinion in Randall is readily distinguishable from the instant case. There the trial court refused to prevent the reading of the alias in the charging instrument to the jury even though it had no relevance. In the instant case the trial court attempted to keep the alias out of the evidence but it was nevertheless inadvertently mentioned. The mention of the aliases here was not egregious. We agree with the trial court’s assessment that it was not so prejudicial as to warrant a mistrial. The circumstances in Petrilli, where 28 aliases were read to the jury, and in Wilkerson, where the prosecutor argued that the use of aliases was suspect, are infinitely worse. We find no error on the part of this trial court, much less cause for reversal.

Sentencing

A detailed pre-sentence report was prepared by an officer of the Pima County Probation Department. In addition, a mental health evaluation was made by the Pima County Court Clinic. The conclusions in each of these reports, based on extensive material set forth therein and made a part of the pre-sentence report, were that the appellant was very dangerous and should be incarcerated for aggravated terms. Defense counsel did not like the reports and, in a motion to continue, moved the court to have new reports made. The principal basis for this motion was his contention that the reports were biased. He also accused both authors with relying upon pending charges in California as established. We have examined both reports in detail. They make it very clear that the appellant has not been convicted in California, although all of those incidents are discussed. A criminal defendant is not entitled to a pre-sentence report to his own liking. These reports contained a myriad of letters written on behalf of the appellant, his favorable work record with Kinney shoe stores, his possible reliance upon drugs, and other possible mitigating factors. A pre-sentence report"-must' fairly and accurately report the results of the investigation. The fact that those results are adverse to a defendant does not make the report biased.
The appellant also complains that the investigating probation officer and the mental health expert gave their own subjective assessments of the appellant. This is the business of the court clinic officer. It is the very purpose of such an evaluation since it is a professional, expert opinion. The same can be said to a lesser degree of the probation officer, although that report should be basically objective. It is the task of the sentencing judge to weigh all the material in the report. Nothing suggests the judge was influenced by any subjective observations reported by the probation officer. The reasons for the aggravated sentence were articulated and are contained in the signed minute entry. They are supported in the record.
The trial court here made specific findings of aggravating factors. The only one contested on appeal is the finding that the crime was committed in an especially cruel and depraved manner. A.R.S. § 13-702(D)(5). Our supreme court has interpreted the meaning of cruel and depraved in several capital cases. Recently in State v. Gretzler, 135 Ariz. 42, 659 P.2d 1 (1983), citing State v. Knapp, 114 Ariz. 531, 562 P.2d 704 (1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), these terms are said to mean:
“cruel: disposed to inflict pain esp. in a wanton, insenstate or vindictive manner: sadistic
and
“depraved: marked by debasement, corruption, perversion or deterioration.” 135 Ariz. at 51, 659 P.2d 1.
Repeatedly our supreme court has further said that cruelty involves the pain and distress visited upon the victims, whereas depraved goes to the mental state and attitude of the perpetrator as reflected by his words and actions. Gretzler, supra. Here the stabbing was cruel — both victims suf *95 fered excruciating pain from the stabbings. The actions of the appellant, i.e., placing the defenseless victims on top of each other, and then methodically stabbing each of them for no reason, was marked by debasement and perversion. They were not resisting the robbery. There was no point to the stabbings other than torture.
The appellant also questions the constitutionality of the statute providing this aggravating circumstance, but our supreme court has again decided this question in capital cases adversely to appellant’s position. See State v. Gretzler, supra.
Finally, we reject appellant’s contention that his sentences were excessive. They were within the statutory limits and the evidence supports both aggravating circumstances and consecutive sentences.
We affirm the convictions and sentences.
HATHAWAY and HOWARD, JJ., concur.