225 N.J. Super. 66 (1988)
541 A.2d 1075
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ABDUL HAQQ SALAAM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 1988.
Decided April 8, 1988.
*67 Before Judges MICHELS and GAYNOR.
Alfred A. Slocum, Public Defender, attorney for appellant (Susan Green, Assistant Deputy Public Defender, of counsel and on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (John Kennedy, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Abdul Haqq Salaam was convicted of armed robbery, a crime of the first degree, in violation of N.J.S.A. 2C:15-1. The trial court committed defendant to the custody of the Commissioner of the Department of Corrections for a term of 17 years and assessed a penalty of $25, payable to the Violent Crimes Compensation Board. Defendant appeals.
According to the State's proofs, on the evening of October 18, 1985, Shirley Fennell was working as a cashier at the Cumberland Farms convenience store located at 145 Union Avenue, Irvington, New Jersey. At approximately 9:00 p.m., a man later identified as defendant entered the store, selected a bag of corn chips and approached the register counter behind which Ms. Fennell was working. Defendant, who was standing approximately 2 1/2 feet from Ms. Fennell, handed her a dollar bill. However, when Ms. Fennell opened the register, she noticed that defendant was holding a pistol in his hand.
*68 Defendant directed Ms. Fennell to give him all the 20 dollar bills in the drawer. When she stated that she could not because all bills over $10 in denomination went directly into a drop box, defendant told her to stop kidding and threatened to shoot her if she didn't give him all the money in the register. Ms. Fennell complied and handed over several ten and five dollar bills and a large number of singles which in total she estimated to be less than $75.00. Defendant then exited the store and disappeared from Ms. Fennell's view. The entire episode took approximately five to six minutes.
Ms. Fennell immediately called the Irvington Police Department and related the details of the incident. Before she had finished placing the call, Officer Gary Christie arrived on the scene and asked her for a description of the suspect. Ms. Fennell repeated that the assailant had a mustache and was of "medium height, dark skinned about 150 pounds." She also described the suspect as wearing a dark jacket and dark cap with a small brim. Officer Christie then transmitted a general broadcast of this information over the police radio.
Officers Gary Tola and Edward Gunnerson were on car patrol in the vicinity of Nye Avenue, approximately one half mile away from the Cumberland Farms store, when the description went out at 9:07 p.m. Almost immediately thereafter the officers observed a man with a mustache wearing a dark blue sweatshirt and black cap walking eastward on Nye Avenue. They asked him to stop and he complied. A pat-down of defendant ensued and a toy cap-gun was found in his possession, along with three tens, one five and twenty-seven one dollar bills totaling $62.
Approximately 10 to 12 minutes after the description had been broadcast by Officer Christie, defendant was placed into the squad car and taken immediately to the Cumberland Farms Store for an identification. Officer Tola went into the store where Ms. Fennell and Officer Christie were waiting, while defendant remained in the back seat of the car with Officer *69 Gunnerson. When Ms. Fennell came out, she looked into the car and positively identified defendant as the man who had robbed her less than one-half hour earlier.
Defendant seeks a reversal of his conviction or, alternatively, a modification of his sentence on the following grounds set forth in his letter brief:
POINT I THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY ON IDENTIFICATION. (NOT RAISED BELOW).
POINT II DEFENDANT WAS DENIED A FAIR TRIAL BY THE USE OF AN ALIAS IN THE INDICTMENT AND BY THE TRIAL COURT'S REPEATED REFERENCE TO DEFENDANT'S ALIAS WHEN ADDRESSING THE JURY. (NOT RAISED BELOW).
POINT III THE TRIAL COURT ERRONEOUSLY RELIED UPON THE FACTS OF THE INSTANT CASE IN IMPOSING A SENTENCE GREATER THAN THE PRESUMPTIVE TERM.
We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). However, further comment is appropriate with respect to some of defendant's arguments.

I.
First, we emphasize that unlike the circumstances encountered in State v. Frey, 194 N.J. Super. 326 (App.Div. 1984), the trial court's failure to include a specific charge on identification as approved in State v. Green, 86 N.J. 281 (1981), did not constitute error, let alone plain error. Ms. Fennell observed defendant in a well-lighted store for a period of approximately five minutes, during which time he was no more than 2 1/2 feet from her as she stood behind the counter. Moreover, the description which she gave to Officer Christie was of such accurate detail that Officers Tola and Gunnerson were able to apprehend a suspect bearing identical physical characteristics less than ten minutes later. Within a half hour after the incident had occurred, defendant was brought back to the convenience store, where Ms. Fennell identified him as the person who committed this robbery without hesitation. Moreover, *70 Ms. Fennell's belief that defendant committed the robbery remained constant and unqualified upon cross-examination by the defense.
Additionally, the corroborative evidence offered by the State renders the issue of identification far less compelling than it was in Green or Frey. At a distance of one-half mile from the scene of the crime, defendant was found carrying a toy pistol and $62, the majority of which were one dollar bills. Although circumstantial, this evidence is highly corroborative of Ms. Fennell's account of the crime itself and greatly reduced the chance that defendant's conviction was the product of mistaken identity.
A number of federal cases support the conclusion that we reach here. For example, in U.S. v. Roundtree, 527 F.2d 16 (8th Cir.1975) cert. den. 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976), a federal agent working undercover was robbed by the defendant while in the process of purchasing drugs. Before the robbery occurred, the agent spent approximately one minute exchanging casual conversation with the defendant. At defendant's trial, as in the case at bar, defendant did not object when the judge gave only a general instruction on witness credibility. On appeal, the 8th Circuit Court of Appeals affirmed the conviction, noting that the agent had been extensively cross-examined on his identification of the defendant, and that "defense counsel's primary emphasis in his closing argument dwelled on the alleged tenuous nature of the eyewitness testimony." Id. at 19. In view of these strategical ploys, the court concluded that "the failure of defense counsel to ask for a cautionary instruction was not inadvertent" Ibid., nor did plain error result from the judge's failure to issue such instructions sua sponte. See also U.S. v. Kavanagh, 572 F.2d 9, 12-13 (1st Cir.1978), (where there existed ample circumstantial evidence of defendant's involvement in bank robbery, defense counsel emphasized inconsistencies and inabilities of witnesses to identify defendant and judge adequately covered elements of government's burden of proof in charge to jury, refusal to give *71 requested charge on identification, while inappropriate, did not constitute reversible error). Accord U.S. v. Cain, 616 F.2d 1056 (8th Cir.1980) (where government relied on one eyewitness in prosecution of defendant for arson, court's refusal to give defendant's requested charge on identification did not constitute reversible error where that testimony was strongly corroborated by statements made by defendant to cellmate); Cf. U.S. v. Boyd, 620 F.2d 129, 131-132 (6th Cir.1980), cert. den. 449 U.S. 755, 101 S.Ct. 151, 66 L.Ed.2d 69 (1980); U.S. v. Lone Bear, 579 F.2d 522, 524 (9th Cir.1978).
Furthermore, a number of courts outside of New Jersey have held that such cautionary instructions do not have to be given upon request or sua sponte where, as here, there exists substantial corroborating evidence, State v. Ritchie, 292 Minn. 413, 195 N.W.2d 570, (Minn. 1972); State v. Hart, 625 P.2d 21 (Mont. 1981) cert. den. 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981); State v. Jones, 273 S.C. 723, 259 S.E.2d 120 (S.C. 1979); State v. White, 617 S.W.2d 596 (Mo. App. 1981), where the identification of the witness is positive, certain and consistent, Minnifield v. State, 392 So.2d 1288 (Ala.Cr.App. 1981); People v. Dyson, 106 Mich. App. 90, 307 N.W.2d 739 (Mich. App. 1981); Hair v. State, 597 P.2d 347 (Okla.Cr. 1979), or where defense counsel is able to attack the credibility of identification testimony through cross-examination and closing argument. State v. Edwards, 23 Wash. App. 893, 600 P.2d 566 (Wash. App. 1979); State v. Swink, 620 S.W.2d 63 (Mo. App. 1981); State v. Higgins, 592 S.W.2d 151 (Mo. 1979), app. dism'd 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980); Buchanan v. State, 561 P.2d 1197 (Alaska 1977); Conley v. State, 270 Ark. 886, 607 S.W.2d 328 (Ark. 1980). But see People v. Wright, 43 Cal.3d 399, 233 Cal. Rptr. 89, 729 P.2d 280 (1987) and State v. Long, 721 P.2d 483 (Utah 1986) (holding, with respect to identifications far more questionable than the one under review, that the trial court must give a cautionary instruction whenever identification is a central issue in the case and that instruction is requested by defendant).
*72 Consequently, we are satisfied that the issue of identification was not compelling enough, as in Green or Frey, to require the trial court to furnish a specific identification charge sua sponte. Even assuming that such a charge might have been appropriate, its omission did not constitute plain error in view of the reliability and acuity of Ms. Fennell's description and identification of defendant, the existence of strong corroborating evidence, and defense counsel's opportunity to point out at trial any inconsistencies in Ms. Fennell's account of the events.

II.
During the course of the trial, Ms. Fennell was asked on direct examination whether the man she had previously identified was sitting in the courtroom. After Ms. Fennell acknowledged defendant's presence, the trial court stated for the record that she was "[i]dentifying the defendant, Abdul Haqq Salaam, also known as Willie Favors, as the person who stuck her up in the Cumberland Farms Store." The trial court again referred to defendant as "Abdul Haqq Salaam, also known as Willie Favors" in a subsequent in-court identification by Ms. Fennell on cross-examination and once during his final instructions to the jury. Although no objection to these remarks was made below, defendant nevertheless contends that the alias references "possessed a clear capacity to produce an unjust result" and therefore amounted to plain error under R. 2:10-2. However, while it is well-settled that "the fact of alias names should be kept from the jury unless relevant for some purpose", State v. Stanhope, 139 Ariz. 88, 676 P.2d 1146, 1151 (Ariz. App. 1984) citing Petrilli v. United States, 129 F.2d 101 (8th Cir.1942) cert. den. 317 U.S. 657, 63 S.Ct. 55, 87 L.Ed. 528 (1942) and United States v. Wilkerson, 456 F.2d 57 (6th Cir.1972) cert. den. 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972), we are convinced that the references to defendant's alias do not require a reversal of his conviction.
*73 "The principle objection to the use of an alias in a criminal proceeding is that an alias implies that the defendant belongs to the criminal class and thereby prejudices the jury." State v. Muniz, 95 N.M. 415, 622 P.2d 1035, 1037 (N.M. 1981); D'Allessandro v. United States, 90 F.2d 640, 641 (3d Cir.1937); United States v. Grayson, 166 F.2d 863, 867 (2d Cir.1948). Although the court may refuse to strike an alias from the indictment prior to trial if it is somehow relevant to the State's case, a motion to strike may be renewed by the defendant during the course of trial if the State fails to offer any proof relating to the alias. Ordinarily, in such situations, the alias will be stricken and an appropriate precautionary instruction will be given to the jury. United States v. Addonizio, 313 F. Supp. 486, 491 (D.N.J. 1970) aff'd 451 F.2d 49 (3d Cir.1971), cert. den. 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). However, the majority of decisions involving this issue hold that the admission of irrelevant aliases into evidence will not afford a basis for reversal unless some tangible form of prejudice is demonstrated, i.e., where such names have been intentionally offered as indicia of guilt. See, e.g., People v. DeHerrara, 680 P.2d 848 (Colo. 1984) (discussed infra).
Thus, in State v. Blanks, 190 N.J. Super. 269 (App.Div. 1983), where defendant was convicted for armed robbery, no motion was made prior to the start of trial to strike the defendant's alias from the indictment. As such, the prosecutor referred to defendant as "Edward Blanks, also known as Johnnie Washington" in each count of the indictment read to the jury during the State's opening statement. We did not find that this constituted reversible error, however, because (1) it was inadvertent, as even defendant conceded; (2) it was not repeated in testimony or summation, and (3) it did not go to the merits of the defense, namely that defendant was unfortuitously caught fleeing from an unrelated gambling incident.
Admittedly, the error is perhaps more egregious when committed by a trial judge during testimony and in the course of his final instructions to the jury since "[a] judge must be *74 careful not to throw his judicial weight on the side of either the State or the defendant ... nor may he cross that `line that separates advocacy from impartiality.'" State v. Ray, 43 N.J. 19, 25 (1964). However, as the Federal Court of Appeals noted in Petrilli, 129 F.2d at 104:
where, as here, a reference to the aliases has crept into the proceedings, the situation on appeal will not be controlled by the application of any abstract principle, but by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole.
Notwithstanding the fact that the prosecutor in Petrilli read 28 of the aliases contained in the indictment to the jury in his opening statement, the court did not find prejudicial error. Although defense counsel objected midway through the State's recitation, this objection was grounded only upon the contention that the State would not be able to prove that the defendant actually used these names. Despite the fact that the State never attempted to prove that the aliases were used, the court affirmed the conviction since the aliases did not "go to the gist or substance of the offense charged," and the trial judge specifically charged the jury that the existence of these alleged aliases could not be considered as evidence of guilt. Ibid.
A similar result was reached in Wilkerson, where the prosecutor announced defendant's alias to the jury in his opening statement despite the fact that the court had stricken it prior to trial. Additionally, the prosecutor went on to observe in his summation that "people with nothing to hide do not use aliases." Wilkerson, 456 F.2d at 59. Although the court strongly disapproved of these tactics, defendant's conviction for armed bank robbery was nevertheless affirmed based on the strength of the evidence.
In People v. Romero, 694 P.2d 1256 (Colo. 1985), where no objection was made to the alias contained in the indictment before trial, the trial judge referred to defendant as "Raymond Romero also known as Daniel Jiminez" in his final instructions to the jury. In ruling that this did not constitute "plain error", the Colorado Supreme Court distinguished a previous case, *75 People v. De Herrera, 680 P.2d 848 (Colo. 1984), where the trial court first denied the defendant's motion to strike the alias from the information, then admitted, over defendant's objection, two driver's licenses bearing different names taken from defendant after his arrest, and finally instructed the jury, again over defendant's objection, that the use of an alias may be considered in determining guilt. Romero, 694 P.2d at 1267. In Romero, however, the overwhelming evidence of defendant's involvement in the robbery and the absence of any reference to the alias as an indication of guilt negated any potential prejudice the trial court's instruction might have created. Id. at 1268. See also Com. v. Sheline, 391 Mass. 279, 461 N.E.2d 1197 (Mass. 1984) (where defendant was convicted for possession of cocaine with intent to distribute, trial court's failure to "sanitize" chemical laboratory certificate's reference to defendant as "Howard N. Sheline, a/k/a Howie Tuna" prior to its admission held not prejudicial where evidence uncontrovertedly demonstrated that defendant was not known as "Howie Tuna" and trial judge instructed jury that certificate's relevance was limited to analysis of drug. Id., 461 N.E.2d at 1202-1204); United States v. Clark, 541 F.2d 1016 (4th Cir.1976) (although State did not use alias read in indictment during the course of trial to prove that defendant was connected to the robbery, defendant's failure to renew motion to strike during trial and absence of prejudice militated against reversal); Accord, State v. Stanhope, 139 Ariz. 88, 676 P.2d 1146, 1151-1152 (Ariz. App. 1984); State v. Peary, 176 Conn. 170, 405 A.2d 626, 631-632 (Conn. 1978) cert. den. 441 U.S. 966, 99 S.Ct. 2417, 60 L.Ed.2d 1072 (1979); But see State v. Smith, 55 Wash.2d 482, 348 P.2d 417 (Wash. 1960) (where, over judge's directions at close of trial, defendant's unproved aliases inadvertently went to jury on instruction cover sheets and verdict forms, court could not assume that jury did not make association between use of alias and criminality.)
Here, while the trial court's initial comment for the record, that the witness was "[i]dentifying the defendant, Abdul Haqq *76 Salaam, also known as Willie Favors, as the person who stuck her up in the Cumberland Farms Store", may not have been appropriate, the trial court did not insinuate or expressly instruct the jury that defendant's name change could be considered a factor in determining guilt. Moreover, the references to defendant's prior name were made sparingly  only three times  and did not suggest an element of criminal association or bad character on the part of defendant. These references neither compromised defendant's right to have the jury evaluate the merits of his defense nor prejudiced his right to a fair trial. Beyond this, in view of the overwhelming proof of defendant's guilt, there was no real possibility that the trial court's reference to defendant's names "led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).
Accordingly, the judgment of conviction and order of commitment under review are affirmed.